Thank you, Your Honor. Good morning, and may it please the Court. I'm Carla Gilbride, appearing on behalf of the plaintiffs. Tamko Building Products wants to bind Stephen Dye and Douglas Bone to the terms of its limited warranty based on the actions taken by their roofers. Specifically, the action the roofers took was tearing wrappers off bundles of shingles and installing those shingles on plaintiffs' roofs. Under Florida law, in order to establish that a contract was formed under those circumstances, Tamko must prove three things. First, it had the burden of proving that Tamko reasonably communicated the terms of its contract offer and the means of acceptance. Second, Tamko had the burden of proving that the roofers unambiguously and unequivocally accepted those offered terms. And third, Tamko had the burden of proving that the roofers were authorized to enter into contracts affecting plaintiffs' legal rights with respect to the roofing shingles. With respect to Steps 1 and 2 of your analysis, you don't deny the underlying Florida law that says that assent can be inferred from conduct, offers can be communicated to invite acceptance by conduct, and that acceptance can actually be communicated by conduct. We don't contest the Florida law saying that acceptance and assent can be communicated by conduct under terms where both parties understand that the act indicates acceptance. And the track phone versus China case where that Florida law is cited, specifically is cited in both parties' briefs, it's not just any act that indicates acceptance. It's an act that has to be understood by both parties to connote that there's a contract here, and by doing this act, I'm accepting the terms of that contract. Now, when you're doing an act like— But why not here? I mean, this seems like sort of the belt-and-suspenders approach. You're not even asking them to crack open the package to find sort of the golden egg inside. They've put the whole thing on the wrapper for everybody to sort of read and understand up front. You've got the entire warranty, the arbitration clause, sort of return within 30 days, all of it on the outside, and also sort of pointing you to other places where you might find the terms as well. This just seems like total overkill to me. But, I mean, why isn't this, if anything, sufficient notice to the unwrapper? Well, again, when the act that indicates acceptance is something that is ordinarily associated with acceptance, like signing a contract, then there isn't the heightened burden to clearly communicate that this act indicates acceptance because it ordinarily does. Tearing a wrapper off a package of shingles is not an act that ordinarily indicates acceptance. And when, this is what a lot of the shrink-wrap cases that TAMCO itself has cited, when you're dealing with an ordinary action like purchasing a product that people do all the time without ascribing contractual significance to it, it's important that there be some language on the package saying not just here's a bunch of terms, but by opening the package, by unwrapping the package, you are agreeing to these terms. That's the important step that's missing from this record. There's nothing in the record here indicating that anywhere on the bundle of shingles... Do we actually have in the record before us a photograph of the wrapper that actually appeared? We do not, Your Honor. So what we have simply is a declaration from a witness telling us what the wrapper said. Is that right? It is correct, Your Honor. And, in fact, what the declaration tells us is part of what the wrapper said. Paragraph 11 of the Tisha Miller Affidavit says, among other things, the wrapper said, and here's I quote, important and read carefully before opening the bundle. TAMCO then sort of extrapolates this language at pages 32 and 33 of its brief to say that this language, important, read carefully, indicates, and now I'm quoting from TAMCO's brief, not from the declaration, this language indicates that opening the bundle would bind the customer to the subsequent legal terms. But your point is it doesn't say it. It doesn't say that. And if there is some... I want to go back to what we do know and what we don't know. Can we tell from the declaration how much other language was on the package or whether the rectangular box contained any text that was larger than the rest of the text on the wrapper? Can we answer any of those questions from the four corners of the declaration? We cannot, Judge Marcus, and that's what makes this case like Bazemore v. Jefferson Capital Systems because in that case this court said it is the burden of the proponent of the contract to include in the record all of the contract terms, the exact contract it wants to enforce. Here all we have is a fragment. We have the terms of the limited warranty that TAMCO purports was found somewhere on this bundle or this wrapper, but we don't know what other language was included on the wrapper along with the warranty and whether TAMCO intended that the act of opening the wrapper would bind the roofers or the other terms. But it would be fair to say, would it not, that you have more than just a fragment? You've got a pretty detailed statement. It runs about nine lines, ten lines. I'm sorry to cut you off. I was going to say we don't know what we don't know. So we know what the language of the warranty is. We don't know what additional terms there might have been, whether the warranty is 50% of the binding contract language, 80% of the binding contract language. Maybe it's 100%, but we just don't know. Is this an argument that you made to the district court? Did you say, hey, we don't know enough, don't have a photo, the affidavit is not sufficient along with the reproduction of the terms? We did challenge the sufficiency of TAMCO's evidentiary submissions before the district court, Your Honor. But the district court's order doesn't indicate any such argument. That's what concerns me. I would expect the district court to address the point you're making. The district court really resolved this question on the basis of agency, Your Honor. And so there are two responses. TAMCO has said that this issue was waived, and Judge Newsom, I believe you're alluding to that. And the first instance or the first response is it wasn't waived, specifically at page 19, footnote 2 of our opposition to the motion to compel. We specifically said, quote, TAMCO has not provided evidence sufficient to establish an enforceable agreement to arbitrate. And there were some other specific places where we contested the sufficiency of the evidence. But was it clear, I guess, in footnote 2 or elsewhere, sort of what you meant by that? It sounds sort of conclusory. I mean, did you mean the affidavit plus the reproduction of the warranty is insufficient, that we need a photo or some better evidence? Is that what you were arguing? Did the district court understand that's what you were arguing? But because, as Judge Choflat says, some implication that the district court didn't understand that that's what you were arguing, you know, is found in the district court's order, which doesn't address this argument. So there, as I mentioned, as we mentioned in our reply brief, there was a change in emphasis. Our opposition at docket entry 19 was focused on Mr. Dye's and Mr. Bone's lack of knowledge of these terms, that they never saw the terms, they were not presented to them. Which is the second argument that we haven't quite let you get to yet, but we will, the agency piece of it. But just as to number one, sort of the sufficiency more generally. And we did state that the evidence was insufficient both to basically put them on notice of the terms, so that goes to the sufficiency of evidence with respect to the offer. That's the point that I want to just drill down on. Did you argue in district court that the evidence was insufficient because the notice was not good? Opening the package, forget, let's just assume the roofer binds the owner of the home, the purchaser. Did you say in words of substance to the district court, look, you've got a problem here. But the problem here is in order for there to be assent under contract in Florida, by conduct, you've got to have a clear affirmative statement on the package that you open up. And it just wasn't conspicuous enough. Or words to that effect. Notice wasn't given in this case. Did the district court get that argument? I understand the court went off on agency, which is a different issue. We believe that the point was adequately made to the district court, whether the district court focused on it or not. But we did. Right. No, it doesn't matter to me whether the district court focused on it. I just want to know, did you raise it? We raised the sufficiency of evidence in saying basically that the plaintiffs here were not put on notice. They didn't know about this. You're talking about the actual plaintiffs and not the roofer. That's correct, Your Honor. And we did focus on the plaintiffs because we were responding to the argument that Tamko made, which was they purchased these shingles, the language was on the shingles, and so they're bound. Then when we said in the opposition brief, well, they never saw them, their roofers installed it, that's when Tamko pivoted in its reply brief and focused on the agency arguments, which were the arguments that the district court ultimately found persuasive. But the second argument why I would contend that there's no waiver here is we're responding on appeal to a central tenet of the district court's holding. At page 12 of the district court opinion, the district court said the roofer's knowledge concerning the evidence of the limited warranty is imputed to the plaintiffs. Implied there is that the roofers had knowledge concerning the existence of the limited warranty. In order for that knowledge to be imputed through principles of agency, it was taken as a given by the district court that the notice was sufficient and that there was knowledge there on the roofer's part. It would not be equitable to say, well, we can't contest that implicit finding that the roofers had knowledge because maybe the argument wasn't fleshed out in as much detail in our papers before the district court. I've actually been thinking that you've been making sort of two, before us, two different what I'll call insufficiency arguments. One is an insufficiency argument focused on the fact that, in effect, we don't have a photo here. There is better evidence and the affidavit plus the description or the setting out of the warranty is not good enough. We don't really know what was on the package because we don't have a photo, number one. Number two, even accepting TAMCO's representation of what was on the packaging, that's not sufficiently conspicuous. I've been sort of separating those in my mind. My questions to you have really been focused on the first, is the argument that because, in effect, we don't have a photo, is that argument properly before us? If it's, you know, if it's, we can still determine on the merits whether the phraseology on the packaging as represented by TAMCO is sufficiently conspicuous under Tracfone and the other cases, but as to the first, you know, what I'll call the photo argument, is that an argument that you made to the district court? That we need better evidence? With respect, Judge Newsom, I would say that it's not an argument about the type of evidence. It's not a best evidence rule kind of argument that there should have been a photo because, again, you know, the affidavit of Ms. Miller could have included all of the language, but specifically, you know, we don't know what other language was being excerpted here. And that's the problem under Bazemore, is that we don't know what all the terms are that TAMCO is seeking to bind purchasers of its shingles to. And that goes to not just the sufficiency of the evidence, but it goes to whether or not, you know, there is a contract here, whether, well, I guess it does go to the sufficiency of the evidence because it goes to whether or not there's a contract in the record. But it does also, at the same time, go to the issues of shrink-wrap because, again, all of the shrink-wrap cases have language that specifically says, by opening the product or by opening the packaging, you're agreeing to these terms. We don't know whether that language existed here or not. TAMCO seems to... In your position, is the track phone language sort of buyer beware, if you open this, you're bound? Is that sort of a per se rule? It's got to be on there? Is there anything short of that that would satisfy you? You know, important read before opening, return within 30 days if not satisfied. That's not good enough, or you wouldn't be making the argument you are in this case, but the track phone, or maybe I've got my cases mixed up, but sort of buyer beware, you're bound if you open. That is good enough. Is there anything between those two that is sufficient, or do we have to have the language buyer beware if you open, you're bound? We're not advocating that that has to be present in every case, but I would have two responses. One is that in every single case that TAMCO cites, that language was present, and in some cases, you know, such as the ProCD case, you also had the ability to return within 30 days, the ability to review the terms at leisure. In the management computer controls, you had the terms being presented more than once in the management computer controls, or I'm sorry, in the iCode, the SALCO distributors versus iCode case, it was three times, once on the outside of the packaging, also on the screen when the person ran the software on their computer. So there were multiple presentations, but I would argue it's a sliding scale, and that when you have the same person entering into the agreement, sought to be bound by it, that is opening the package, and where it's fairly simple or straightforward terms, maybe you don't have to have as clear of a notice, but that's not what you have here. You have potentially, you know, multiple binding terms if this case is like some of the other cases that the district court relied on, Hokeman and American Family, where it wasn't just the warranty terms that were binding, it was also you have to install, you know, in compliance with certain instructions, and there are two different parties here. There's the roofer, who TAMCO knows full well, in most cases is going to be the one opening the packaging, is purporting to bind someone else. When you have a complex situation like that, notice becomes all the more important, and I'll reserve the balance of my time. You've said so well, but Mr. Beisner. Good morning, Your Honors. May it please the Court. I'm John Beisner. I'm counsel for TAMCO. Let me start by addressing some of the questions that you have posed. First of all, with respect to the question of preservation of the evidentiary objection, which counsel was raising here, I would urge the Court's review of the footnote 2 on page 19 of the opposition brief where counsel says this issue is preserved. This is a footnote that basically says that they're not going to respond to the argument about whether the arbitration should be delegated to the arbitrator, and it refers to the rest of the brief saying it's clear from everything else we've argued there is no agreement here, so there's no reason to do this. In other words, they're arguing TAMCO hasn't made its case that there is an arbitration agreement, but there's nothing in here that talks about the evidence, the insufficiency of the affidavit that's being referenced, anything like that. I'm confused. Where are you referring to? The blue brief? No, the district court paper. Are you referring to the district court? The district court brief counsel cited to page 19, footnote 2, of the opposition brief in the district court, and I'm just saying it makes no reference to the insufficiency of the Tisha Miller affidavit as presenting sufficient facts on this issue. Let me turn to the prominence or conspicuousness issue that we were talking about as well. I do want to make clear that, as the Tisha Miller affidavit makes clear, on the wrapper it said, in looking at the full warranty, as Judge Newsom noted, was printed on the wrapper, important read carefully before opening. That was stated on there. Clearly an alert to the person dealing with the package that attention should be paid to that. And further, if you look at the warranty itself that was printed on the package, the die warranty in any event also made clear that if after reading it the person dealing with the wrapper, the owner did not want to accept those terms, they should return the shingles to the seller to get their money back. So those sorts of alerts were on these packages, and that is not there. I'm curious about something here. Was there a reason that the actual package was not presented to the district court? Would it have been easy enough to put one of those packages in or at least a picture of the package into the district court record as opposed to simply relying on a declaration from a witness who's saying in words or substance this is what it said? Your Honor, I think it was for clarity given the attack on this, but it was for clarity because the purpose of this was to put before the court in black and white in a form, in a printed form, such as a brief or an affidavit, this information. Right, but all the affidavit is is a recitation of what the affiant saw when he looked at it, right? No, it's not, and again to... It's not a photograph. He doesn't attach a picture of the wrapper, does he? No, there is not a picture of the wrapper. So all he can tell us is this is what the wrapper contained. This is the language that was on the wrapper. Right, this is my belief, my review, my accurate recitation of what the wrapper contained. It's actually more than that, Your Honor, because the main thing that is on the wrapper is the warranty, and to counsel this criticism out of the Bazemore case, Bazemore criticized the proponent in that case of not putting the full contract before the court. That was the criticism in Bazemore. Here, the full warranty is part of Tisha Miller's affidavit. It's attached. It's just the physical picture of the full wrapper is what the criticism is here. So your adversary says that the affidavit only provided excerpts. What does she mean by that? The full warranty is there, and what the affidavit covers is the other key language that is there. I see. Just remind me. I'm sorry I don't remember this, but the affidavit says, I've seen the warranty. It's on the box. I've attached it. I've attached a copy of it for your ratification. Some of the key terms are the following. So it doesn't sort of set out in hype verba the entire warranty within the affidavit, but it attaches it and sort of incorporates it. Correct. And it says that the full warranty. But there was other language on the wrapper beyond that, wasn't there? Yes, and that is laid out in Tisha Miller's affidavit. of what was there, right? It may be absolutely accurate. It may be dead accurate. Technically correct. But all the affian can tell me is, can tell me one of two things. Here is what it said. Here's a copy. Or the affian can say, I'm not giving you a copy, but I'm going to tell you from memory I looked at it, or I'm even looking at it now and I'm going to recite it. But the testimony is of a different form than the actual exhibit itself. That's all I'm saying. And there were other things on the wrapper, too, beyond the warranty, right? That is correct, Your Honor. Do we know and can we tell from the affidavit everything that appeared on the wrapper? Your Honor, that is not laid out in full, but again. You may say to me the answer is no, but it doesn't matter. But I just want to get the first answer. My answer is no, and my further answer is it doesn't matter. And my third part of my answer is this was in our opening brief and no objection was made to the sufficiency of the presentation of the wrapper in the district court. So your view is they've waived that? They've waived that. That is our position. Let's assume, arguendo, for the purposes of my question, that we find they said enough not to constitute a formal waiver. The issue was there. The district court just didn't go to it because he had what he thought was an easier way to address it. She did on the basis of agency. Let's just accept that, that it's not waived. It's clear to the extent we can discern Florida law on the subject, is it not, that in order for there to be the formation of a contract, there's got to be acceptance. You can accept by conduct the statute tells us. The conduct here that you cite is ripping open the package which contained the critical language, and that put them on sufficient conspicuous notice. That would be essentially a fair recitation of the law, would it not? That's correct, Your Honor, but just so I am sure, they didn't have to rip open anything to see the language. That was on the outside of the wrapper. I just want to make sure we're on the same page on that. If all I know is the affiant's recitation from recollection of everything that was on the wrapper, and she doesn't include everything that was on the wrapper, and I don't know the size, I don't know the print, I don't know the size or print in relationship to what was not on the wrapper, can I answer the question sufficiently well to say under Florida law that the notice was conspicuous enough to constitute affirmance by conduct? Well, first of all, that assumes there's a requirement under Florida law of some special conspicuousness. You don't think it has to be conspicuous for there to be a sentence? Well, and I think there's some constraint on it here because the Supreme Court in the doctor's associate's case said you can't impose special conspicuousness requirements when it comes to an arbitration court. Well, I'm not looking for the adverb special. I'm simply asking whether under Florida law you can have offer, acceptance, conduct formation in the absence of conspicuous notice to the acceptance. Well, Your Honor, the state courts in Florida, and we've cited federal precedent as well, have consistently accepted the shrink wrap context, and there's no conspicuousness requirement noted in any of those cases that I can recall. Except for the case all of them would go to trial before a jury, I suppose, or an evidentiary trial before the district judge. Yes, Your Honor, and I think that's the case, and I think that the warranty gives you some sense. To avoid all that problem, the courts would have to say here's what you have to say for a shrink wrap. Right, and there's nothing in there that talks about the way this needs to be presented in any particular way. Well, I've got one case, first DCA 1999, management computer controls. In that case, the consumer was held to the terms of a license agreement between the consumer and the software manufacturer where the warning stated that opening the software package would be an acceptance of the terms of the license agreement where it was printed on an orange sticker. It was right on the sticker that sealed the box that the software arrived in. That was enough to put them on notice, presumably because it was obvious and apparent. You couldn't open up the envelope without actually seeing it. Then we look at the browse wrap cases to see if they give us any more help. I mean, I'm eerie bound to Florida law. I'm not writing, I think, on a clean slate, and if I don't know what Florida law is, then maybe I've got to certify it, but I think we know enough to try and answer the question ourselves. So then I was looking at the browse wrap cases, and there, when you look at those cases, there are some of those cases that notice that the browse wrap agreements have only been enforced when the hyperlink to the terms and conditions is, quote, conspicuous enough to place the user on inquiry notice. The word conspicuous at least appears in the browse wrap cases, right? Yes, but it only appears in those cases, and let me note why those cases are very different. I look at a page on a website. The warranty that we're talking about is not on the page. So the question in those cases is, was it clear enough on that page that I need to click something in order to see the terms of the contract that I'm being asked to agree to? We don't have that issue. I agree, and that's the trouble with browse wrap. You've got to go from here to there to there. You have two, three, four steps, whereas in this instance you don't have three steps or two steps. Correct. You simply have, here's the package. You've got four shingles or 14 shingles in a wrapper, and on the wrapper you've got some language. And so you can't help but see it when you take it and you rip it open. I'm simply asking whether under Florida law the notice on the wrapper has to be conspicuous to a reasonable consumer in order to constitute acceptance of a contract. Is it your view that Florida law does not require that it's conspicuous? I don't think there's any. I've not seen a case that has any special conspicuousness required. I didn't say special. I just said conspicuous. I don't know of any that has a conspicuous. So is it your view that it's enough that it's found somewhere, somehow, in some tiny little print on the package? That would be enough for me to be bound to the terms and conditions of the contract? Your Honor, I think the point here is, again, let me make the point this conspicuous argument was not made. I understand, but I prefaced my question by assuming, and you may be right, that they waived it. But let's assume for my question they haven't waived it and it's properly in front of us. I want to know, in your view, whether Florida law would allow the formation of a contract by conduct, by simply opening a package where the terms and conditions were not conspicuously revealed? Yes, because the shrink-wrap cases that are out there, the analysis in those and reaching those conclusions make no reference to a conspicuousness requirement. If it's on the package, those cases have gone there. I agree, Your Honor, in the one case the facts refer to the notion there was an orange label on there. But in the analysis in that case, as I recall. What is it about the conduct, then, if I can't read what's on the package because it's too small or too inconspicuous, what is it about the conduct? What all Florida law tells me in contract is I can be bound by contract if my conduct manifests assent. So it's all that has to happen is I have to use the product? Would that be enough? Your Honor, I think that if there is a statement, if you have the warranty that you're talking about on the package, this is the warranty that comes with this product. I think that if it's there for the consumer to read, they have the opportunity to read it, which is really what even the other cases you were talking about earlier get at. They're bound by that if they go ahead and open the product and use it. Do we have, just so I'm clear, do we have to take the hard line here that Florida law imposes no conspicuousness requirement? Or could we conclude simply that on the facts of this case the shrink wrap or whatever the shingle wrap meets a conspicuousness requirement? Your Honor, I think the court could reach that conclusion, and there's one other fact I want to make. Let me just stop you on that point just so you help me with it. How could we reach that conclusion if we don't actually have the wrapper and all we have is the attestation by the affiant that she saw it and had said that? How do we discern whether it was evident, apparent, clear, conspicuous, use whatever word you want? In part because the warranty is attached to the declarations, to the declaration singular, and it's laid out there and there are parts of it that are in more prominent language than others. You can see the display of the warranty. And where, for instance, where words are all capped on the shingles and they're all capped in the representation? Yes, and so that's laid out in the warranty. The other thing I wanted to note, Your Honor, is we're focusing here exclusively on the wrapper, and there are allegations in the complaint that's further discussed at page 16 of their opposition that the consumers and, with respect to Mr. Dye, through the roofer, had received information about these shingles that they say were improper, that they were not, that they were false. And they attach at tab three examples of the documents they're looking at. So you go to tab three. It's all about the warranty. They had investigated the warranty under the allegations in the complaint before anybody opened anything, and there are quotes from it in the complaint. And so this was not the only source of information. Can you give me the site again? I'm sorry. I just missed it as you were. It's tab three to the opposition to our motion to compel. At page 16, they say tab three are examples of the materials that plaintiffs contend are misrepresentations. And if you look at the four pages they attach in tab three, they're all about the warranty. They explain how the warranty works. They say go look at the complete warranty, which is on, as Tisha Miller's affidavit indicates, is always on TAMCO's website. So they had opportunity and, in fact, indicate that they did investigate the warranties before we came to the opening of the wrapper. I think my time has expired. Thank you. Just to begin where opposing counsel left off with regard to the marketing materials, the fact that the claims in this case involve a breach of express warranty doesn't mean that we're saying anything about the limited warranty, which was the language that appeared on the shingles in addition to some as-yet-unknown other language that also appeared on the shingles in Tisha Miller's declaration. She talks about this bold rectangular box where the statement, to please read there's important information, appeared, quote, among other things. We don't know what those other things are, but we know that they're different from the warranty. But, yes, there are other marketing materials that were included in the record. And the fact that those marketing materials and the complaint mentions the word warranty doesn't mean that we're talking about the written limited warranty under Florida law. Any affirmation of fact or promise by the seller regarding the product that becomes the basis of the bargain is considered a warranty and can support a breach of warranty claim under Florida's version of universal commercial. Can I ask you just a quick question about the stuff that we don't know from the affidavit, the stuff that might have been left out? I mean this comes to us on a motion to compel arbitration. Is there anything about arbitration that you contend was not, you know, sort of on the wrapper via the affidavit and the reproduction? I get it that there, you know, among other things, there might have been a thousand other things that the affidavit doesn't cover. But as to arbitration, is there something that you suspect was not revealed? We have no basis to know one way or the other because we don't know what wasn't included, what, you know, other language wasn't mentioned in the affidavit. But I think another important thing, we haven't gotten to it so just quickly, I wanted to talk about agency. Another important thing that distinguishes… Before we get to agency, I'm still hung up on what they had in front of them. The affidavit from Tisha Miller lays out with respect to Dye's warranty. It has bold letters, mandatory binding arbitration, and that's highlighted. And then it's got capped, every claim, controversy, or dispute between you and TAMCO, blah, blah, blah, shall be resolved by arbitration. And Bond's language was similar in bold caps. It says mandatory binding arbitration, every claim, et cetera. On this record, can we not accept the fact that that appeared on every wrapper that contained every shingle that was sold by TAMCO? Yes, we're not contending that that language appeared on the shingles. What we're contesting is that we don't know what other language appeared and what the relative prominence of that language from the warranty is in the context of the overall shingle wrapper. We know how big the wrapper was. The size of the shingle, I guess, would answer the question. From this record, is it 6x6, 4x4, 2x2? To the best of my knowledge, that's not in the record, Your Honor. And again, while the language about arbitration may be relatively prominent within the context of the warranty, just looking at some of the other cases where this language or TAMCO's practice of putting the warranty language on the shingle wrappers has come up, it's been mentioned in some of those other opinions that the warranty is in smaller print and is relatively less prominent than, for example, this bold rectangular box that's in the center of the shingle wrapper. I think we have your point, Ed Lifeson. May I ask, Chief, just one additional question you can help me with? It's the waiver question. You say you put the district court on notice about the argument in footnote 2, page 19 of your brief before the district court. Is there anywhere else in the record of what you presented to the district court where you argued there was no formation of a contract where you would have made this argument in words or substance other than in footnote 2? Yes, Your Honor. We cited this court's opinion in Jefferson v. Capital Systems and said that TAMCO had the burden under the summary judgment standard articulated in Bazemore of establishing that it formed a contract and that it had failed to meet that burden with both respect to offer, which would be the notice, and with respect to acceptance. And that would be in the same brief that we're talking about in the . . . Yes, that would be page 19. I believe the citation to the summary judgment standard of Bazemore was on page 5, and then we went on to make the argument about the lack of notice and the lack of acceptance in the subsequent pages between pages 6 and 12. Thank you very much. Court will be in recess until 9 o'clock in the morning. All rise. Thank you.